**Gregorio LOPEZ and wife, Inez A. Lopez, Appellants,**

v.

**NEW AMSTERDAM CASUALTY COMPANY, Appellee.**

No. 17330.

United States Court of Appeals
Fifth Circuit.

Dec. 10, 1958.

G. Woodson Morris, Guy Bonham, San Antonio, Tex., for appellants.

Charles W. Barrow, Beckmann, Stanard, Wood, Barrow & Vance, San Antonio, Tex., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The appellant, Inez A. Lopez, was employed by Finesilver Manufacturing Company, of San Antonio, Texas. The appellee, New Amsterdam Casualty Company, had issued a policy of insurance to the employer, Finesilver Manufacturing Company, to cover its liability under the Workmen's Compensation Law of Texas Vernon's Annotated Civil Statutes, art. 8306 et seq. Mrs. Lopez and her husband sued the appellee, asserting by an amended complaint that Mrs. Lopez, while at

work on January 8, 1957, lifted a bundle of bluejeans, sustained injuries in so doing, and became entitled to an award of workmen's compensation. The casualty company denied liability. At the trial Mrs. Lopez testified that, after lifting the bundle, she had an abdominal pain on her right side—burning and itching on the inside. She was sent by her forelady to a doctor who made a diagnosis of muscular sprain and recommended electric heat and rest. Thereafter Mrs. Lopez consulted a doctor of her own selection who sent her to another for consultation. These doctors diagnosed Mrs. Lopez' condition as a hernia and told her that surgery was necessary. One of them operated on her. After the operation the doctor who had performed the operation told her he had made a mistake, that she did not have a hernia, and that he had removed her appendix. In response to her statement that nothing was wrong with her appendix, the doctor commented that maybe the next two or three years she would have. Neither of the two doctors who made the diagnosis of hernia testified. What we have said about them and their connection with the case is learned from the testimony of Mrs. Lopez.

Some months after the operation Mrs. Lopez consulted Dr. Frank F. Heger who testified as a witness on her behalf. He found no evidence of a hernia. He did find that she had been operated upon and that an incision of six to eight inches in length had been made through her abdominal wall, and at the line of the incision she had "a pretty good sized keloid". This, according to Dr. Heger, was permanent, painful and disabling. A doctor, who was the physician for the Finesilver Manufacturing Company, testified that he had examined Mrs. Lopez in 1955 to determine whether she had a hernia and found none. At that time Mrs. Lopez had a history of an injury in the right groin in December of 1953. He again saw her, on five or six occasions, after the incident of January 8, 1957, and diagnosed her condition as a muscle in-

jury or sprain for which he prescribed rest and physiotherapy.

Dr. Heger said, without qualification, that Mrs. Lopez had no hernia and all of the other testimony on this point was to the same effect. He was asked how he accounted for the itching and burning sensation which Mrs. Lopez had after the accident took place. He answered that the itching and burning sensation was due to the keloid, and the only time she had difficulty "with the right side is when she lifted this bundle, I think its approximately a year ago." He found a tenderness in the right side but said he had no idea as to the cause of it. Nothing in the testimony indicated that Mrs. Lopez had any condition resulting from the lifting of the bundle that required surgery.

Dr. Heger was asked if he could tell from Mrs. Lopez' incision the type and character of the operation, and he responded that "when we do surgery in a woman and your diagnosis is somewhat doubtful, that you're not too sure of just what will happen, you make a midline incision." "The purpose of it", he stated, "is that you can go, if you find pathology on the right side, you get adequate exposure; and if you have pathology on the left side you have adequate exposure." Dr. Heger was asked whether or not, on assumed facts, an operation of some kind was indicated, and he answered, "I certainly would if she complained as much to the surgeon who operated on her as she did to me". There was no testimony as to the extent of the complaints to the surgeon who operated, and the complaints of Mrs. Lopez to Dr. Heger were with respect to the postoperative keloid.

The court, by its instructions, charged the jury "that in considering the incapacity, if any, of the plaintiff, Inez A. Lopez, you will disregard and not take into consideration any evidence relating to incapacity, if any, or disability, if any, solely caused by the operation in August of 1957." The court, after instructing the jury, submitted a number of special

issues, the first of which was, "Do you find from a preponderance of the evidence that the plaintiff, Inez A. Lopez, sustained an accidental injury on January 8, 1957, while employed by the Finesilver Manufacturing Company?" The jury gave a negative answer to this question. This finding was warranted by the evidence. From a judgment for the insurance company the case is before us on appeal.

As stated by the appellants, "Plaintiffs' whole lawsuit was based and predicated on the fact of her injury of January 8, 1957, and that, as a consequence thereof, it became necessary for her to undergo an operation involving major surgery." The appellants attack the court's charge that the jury should not consider evidence of disability solely caused by the operation. The challenged instruction did not preclude a jury finding that Mrs. Lopez sustained an accidental injury while employed. Even though such a finding had been made it would not necessarily follow that the disability of the keloid was caused by the accident.

The Texas "courts have uniformly held that a compensable injury under the Workmen's Compensation Law includes and contemplates not only the immediate effects arising from the injury itself, but the effects of any aggravation of such injury resulting from medicinal or surgical treatment, when there is no intervening, independent cause to break the chain of causation between the new injury or aggravation and the original injury." United Employers Casualty Co. v. Marr, Tex.Civ.App., 144 S.W.2d 973, 976; Zurich General Accident & Liability Ins. Co. v. Daffern, 5 Cir., 1936, 81 F.2d 179, certiorari denied 298 U.S. 667, 56 S.Ct. 751, 80 L.Ed. 1391; 45 Tex. Jur. 477, Workmen's Compensation § 83.

The difficulty with this phase of the appellants' case is the failure to adduce any proof connecting the operation to the lifting of the bundle. The evidence of Dr. Heger which is relied upon to establish causation is, at best, merely speculative. Recovery cannot be predicated on evidence of this kind. Maryland Casualty Co. v. Clark, Tex.Civ.App., 140 S.W.2d 890; Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442.

The court refused to permit further questioning of Dr. Heger regarding his belief as to the purpose of the operation and this refusal is specified as error. The testimony sought would have merely added conjecture to speculation and was properly excluded.

The court declined to submit, at the request of the appellants, special issues as to the value of the medical services of the doctor who originally treated her and of the hospital bill. The failure to pose these questions has resulted in no prejudice to the appellants.

The judgment for the appellee was a proper one. It is

Affirmed.